**[J-80-2021] [OISA: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| RUTH L. KNEEBONE | : No. 52 MAP 2021 |
| | : |
| | : Appeal from the Order of the |
| v. | : Commonwealth Court at No. 807 |
| | : C.D. 2019 dated July 9, 2020, |
| | : Reconsideration Denied August 26, |
| ZONING HEARING BOARD OF THE | : 2020, Reversing the Order of the |
| TOWNSHIP OF PLAINFIELD AND | : Northampton County Court of |
| PATRICK LUTZ AND PAMELA LUTZ | : Common Pleas, Civil Division, at No. |
| | : C-48-CV-2018-11586 dated June 7, |
| APPEAL OF: PATRICK LUTZ AND | : 2019. |
| PAMELA LUTZ | : |
| | : ARGUED: December 7, 2021 |

## OPINION IN SUPPORT OF DISMISSAL

**JUSTICE WECHT**                                                   **DECIDED: April 28, 2022**

The Opinion in Support of Affirmance ("OISA") compounds into one issue what should be considered two separate questions. First, as a matter of law, can the undersized nature of a property support a finding of unnecessary hardship, which might in turn allow a zoning hearing board to grant a dimensional variance pursuant to 53 P.S. § 10910.2(a)?[1] Second, in the instant case, did the Commonwealth Court misapply its standard of review in reversing the trial court and the zoning hearing board?

---

[1]    Section 10910.2 of the Pennsylvania Municipalities Planning Code ("MPC") enumerates five factual findings a zoning board must make in order to grant a request for any variance on the basis of unnecessary hardship. Specifically:

The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other

Due to a lack of developed advocacy on the first question, I would dismiss this appeal as improvidently granted. Moreover, and regardless of the answer to that first question, the parties' arguments demonstrate that the second question amounts merely to error review and does not merit consideration by this Court. *Cf.* Pa.R.A.P. 1114.

## I.

The OISA aptly relates the factual context for this dispute, *see* OISA at 1-7, leaving little need for expansion or clarification. Therefore, I begin with our well-settled standard of review. When neither the trial court nor the Commonwealth Court conducts a hearing or receives additional evidence that was not before the zoning board, our question is whether the board committed an abuse of discretion or an error of law in granting the

---

physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a).

variance. *Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 672 A.2d 286, 288 (Pa. 1996). An abuse of discretion exists only where the zoning board's findings are not supported by substantial evidence. *Id.* at 289. Substantial evidence, in turn, is what a reasonable person might accept as adequate to support a conclusion. *Oasis v. Zoning Hearing Bd. of S. Annville Twp.*, 94 A.3d 457, 461 n.5 (Pa. Cmwlth. 2014) (citations omitted). Courts must view the evidence in the light most favorable to the party who prevailed before the fact-finder, *In Re McGlynn*, 974 A.2d 525, 534 n.9 (Pa. Cmwlth. 2009) (citations omitted), and the only inquiry is whether there was evidence to support the findings made—not whether the evidence could have supported other findings. *Keslosky v. Old Forge Civil Serv. Comm'n*, 73 A.3d 665, 671 (Pa. Cmwlth. 2013); *see also Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005).

Here, Patrick and Pamela Lutz' contractor, Adam Pooler, conveyed to the Plainfield Zoning Hearing Board ("the Board") that the lot at 5735 Kesslersville Road in Nazareth was undersized, due to outdated zoning regulations. *See* Notes of Testimony ("N.T."), 9/11/18, at 10 (opining that the Lutzes' property occupied a "[p]re-existing lot that would not be permitted today"). The Commonwealth Court held that Pooler's testimony did not "convert [the Lutzes'] preference [for a deck of a certain size] into a hardship or substantial evidence thereof." *Kneebone v. Zoning Hearing Bd. of the Twp. of Plainfield*, 2020 WL 3866643 at *5 (Pa. Cmwlth. 2020). The panel did not "agree [with the trial court] that Pooler's testimony . . . established that the size and configuration of the [lot] created a hardship requiring the granting of a dimensional variance." *Id.*

The OISA upholds that decision, finding that "the Board erred by not predicating the variance on the satisfaction of the prerequisites set forth by the MPC and the Plainfield Zoning Code" and adds that, "to the extent it found unnecessary hardship, such finding was not based upon substantial evidence." OISA at 20. Following the Commonwealth

Court's lead, the OISA again invokes both available justifications for reversal—(i) as a matter of law, the OISA concludes that undersized lots are not themselves hardships within the meaning of the MPC and (ii) even if they were, the OISA finds that there was a lack of substantial evidence here to support such a conclusion. Because neither opinion flatly concludes that the Board committed either an abuse of discretion or an error of law to the exclusion of the other, I consider the grounds for both.

In light of our precedent, I would hold that the Commonwealth Court exceeded its scope of review to the extent that it found that Pooler's testimony did not constitute substantial evidence of the lot being undersized.[2] The intermediate panel was limited to determining whether that testimony, considered in the light most favorable to Lutz, *see* *McGlynn*, 974 A.2d at 534 n.9, *could* have supported the Board's finding that the lot was undersized; it was not empowered to consider the import of Pooler's statements anew and replace the decision below with one more consistent with its own judgment. Here, a reasonable mind could conclude that Pooler's statements established that the lot in question was undersized and would not have been permitted by current regulations. Accordingly, the Board was entitled to rely upon that evidence for its finding that the lot is undersized, and I fail to see how doing so could constitute an abuse of its discretion.

What more likely explains the reversal below, as upheld by the OISA, is the determination that a lot being undersized based on prior regulations can never constitute a hardship, as a matter of law (despite any invocations of the phrase "substantial

---

[2] While the OISA initially adheres to Lutz' phrasing of the relevant hardship, *see* OISA at 9 ("the Board specifically found, *inter alia*, that the [Lutz] lot was small for the district it was in, and that in light of its undersized dimensions, strict compliance with the rear-yard setback requirement would create an unnecessary hardship"), it later gives way to rearticulations that encompass the ultimate issue and, I believe, thereby complicates the analysis. *Id.* at 14 (referring to the hardship as the choice between building an addition onto the Lutz house and building a covered deck onto the addition); *id* at 18 (referring to the hardship as "not having a raised, covered deck of the size proposed by [Lutz]").

evidence"). The question then becomes not whether Pooler sufficiently established that Lutz' lot is undersized, but whether that fact, in turn, is cognizable as a hardship under Section 10910.2(a) of the MPC. Like the Commonwealth Court, the OISA holds that it should not be so cognizable. As articulated below:

> Some lots are smaller than others. Owning the smallest lot in a development does not, in itself, create a hardship triggering an automatic right of a landowner to a variance to encroach upon setbacks established by local zoning. Coupling a small lot with an owner's preference for a deck larger than what local zoning permits does not transform a small lot into one burdened by a hardship.

*Kneebone*, 2020 WL 3866643 at *5. While the OISA falls short of announcing such a rule in explicit terms, it does so implicitly through its reliance on *Larsen*. There, a zoning board granted property owners a variance to build a large deck onto the back of their house, and the Commonwealth Court reversed. 672 A.2d at 288. This Court affirmed, because (i) "the mere desire to provide more room for a family member's enjoyment" failed to constitute a hardship, (ii) the deck's encroachment into the rear setback owed to an addition the variance-seekers had constructed the year prior, and (iii) the physical circumstances cited to justify a variance were not sufficiently unique to the property in question. *Id.* at 290-291; *cf.* 53 P.S. § 10910.2(a)(1), (3). The OISA appears to treat *Larsen* as the flagship for an entire category of cases, those in which a property owner seeks a variance based on "the mere desire to provide more room [for their family]," 672 A.2d at 290, and concludes that requests falling in that category will forever fail to satisfy the first prong of Section 10910.2.

As such, the OISA is confident that *Larsen* is sufficient to resolve the case at hand. *See* OISA at 15-16. I cannot agree. For one thing, *Larsen* predates our guidance in *Hertzberg*—holding that dimensional variances are "of lesser moment" than use variances, requiring a lesser "quantum of proof" to support findings in their favor, and thereby establishing a "relaxed" standard for determinations of hardship—by two years.

721 A.2d at 47; *see also Township of Northampton v. Zoning Hearing Bd. of Northampton Twp.*, 969 A.2d 24, 28 (Pa. Cmwlth. 2009) ("*Hertzberg* directs that a more relaxed standard should be employed when analyzing the hardship").  Even assuming that the instant case was on all fours with *Larsen*, I would submit that the OISA's present analysis is incomplete without considering whether and how review of a decision granting a similar variance might have changed in a post-*Hertzberg* world.

Moreover, the case *sub judice* is not on all fours with *Larsen*.  Lutz argues, as the homeowners in *Larsen* never did, that the lot in question is undersized, due to outdated zoning regulations.  We must not gloss over this crucial difference.  The OISA seems to assume that wanting more space is wanting more space, period.  But Lutz does not argue that the property at 5735 Kesslersville Road is undersized for the family's desires or in the general sense of the word.[3]  Lutz specifically contends that the lot in question is constrained by a bygone zoning scheme, such that strict compliance with the rear setback constitutes an unnecessary hardship.  To be sure, the MPC provides that a hardship must arise from physical circumstances, "and not the circumstances or conditions generally

---

[3]     The OISA asserts that "undersized" is a "colloquial description in the present context," and determines that, because "it is not a term used by the MPC . . . it carries no legal significance standing alone."  OISA at 11 n.6.  To be clear, I do not ascribe any independent meaning to the word.  Rather, I consider its import in the context of the specific passages of Board testimony that discuss the fact that the lot would not be permitted under current zoning regulations.

Beyond the fact that I find consideration of the general (or "colloquial") sense of the word "undersized" to be inconsistent with Lutz' argument and the Board's findings, I would further observe that the term is inherently relative.  For instance, an elephant cannot be considered "undersized" without knowing what size it is expected to be.  And for this same reason, "undersized" cannot function as a synonym for "small"—an undersized elephant is still quite large.  We must then investigate Lutz' use of the word.  The lot is undersized in relation to what?  Lutz, Pooler, and the Board provide the answer: the lot is undersized in relation to what would be "permitted under current zoning regulations."  N.T., 9/11/18 at 10.

created by provisions of the zoning ordinance in the neighborhood of district where the property is located." 53 P.S. § 10910.2(a)(1). But one could make a colorable argument that the phrase "provisions of the zoning ordinance" should be presumed to mean provisions of the *current* zoning ordinance, thereby allowing claims that arise from conditions or circumstances created by a *past* zoning ordinance. Lutz's novel argument may conceivably change the analysis regarding whether the hardship was self-created and whether it was unique.[4] In hastily reasoning that this case is analogous to *Larsen*, though, the OISA fails to confront these nuances.

## II.

Putting aside the fact that our precedent may command us to reason through this appeal differently from the *Larsen* Court in the wake of *Hertzberg* and the fact that Lutz raises a novel argument with which the lead opinion does not truly contend, I recognize that the instant appeal presents a question of substantial importance which merits *allocatur*.[5] But neither party focuses its briefing on this question. And neither presents any statutory analysis. Moreover, the lower courts did not have the opportunity to pass on the issue. Accordingly, this Court lacks the developed advocacy necessary to come

---

[4] A variance request based on the notion that a lot is undersized is different in kind from a variance request based only in the desire for more space, when considering these statutory commands. As to self-creation, it would seem circular (not to mention unresponsive to the argument) to simply fault the owner of an undersized lot for using too much of the space allotted to them, thereby "pushing" a structure such as a deck into a setback and necessitating a variance. Meanwhile, determining which lots are most, and therefore uniquely, restricted by past zoning regulations such that relief is warranted would involve a complex and comparative analysis of nearby properties, a detailed understanding of the timeline of zoning decisions, or both.

[5] Stated succinctly, the question would be whether, as a matter of law, a determination that a lot is undersized because of an outdated zoning scheme can support a finding of unnecessary hardship under the MPC?

to a well-reasoned conclusion. This case is not an appropriate vehicle through which we may offer an answer. I make no comment on the ultimate merits of the issue. I am compelled to recognize, however, that the intersection of the MPC, *Hertzberg*, and Lutz' novel argument presents an issue far thornier than the OISA makes it out to be.[6]

The foregoing examination, indicating a difficult question of law that requires more direct and nuanced analysis than the Court can provide in light of the arguments before it, serves to underscore the fact that our resolution of this case in its current posture would constitute error review. Neither party advocates for a particular interpretation of *Hertzberg*

---

[6] The OISA asserts that "[c]ontrary to [my] suggestion," Lutz does not raise the issue as I have phrased it in Footnote 5. OISA at 18. Further, the OISA contends that "the only aspect of the prior zoning regulations that has been mentioned by any party or tribunal in this matter is the fact that the lot size conformed with that ordinance." *Id.* These statements are contradicted by the record. Before the Board, Pooler was asked whether the lot size was "created by the Lutzes or . . . [whether it was] a pre-exisitng half acre lot that would not have been permitted under current zoning regulations." N.T., 9/11/18, at 10. Pooler responded, "Pre-existing lot that would not be permitted today." *Id.* Nowhere else does the Board discuss how, why, or to what extent the lot is undersized. Therefore, we can presume that it relied upon Pooler's statement when it recognized "the undersized dimensions of the lot" and referred to it being a "small lot of record." *See* ZHB Opinion, 11/15/18, at 9; *see also* Tr. Ct. Op. at 10 ("Property's lot is undersized which creates a hardship"). Contrary to the OISA's retelling, both (i) the finder of fact and (ii) the trial court that upheld its decision plainly acknowledged and relied upon the understanding that the Lutz lot would not conform with the current ordinance.

Furthermore, to the extent that the OISA faults Lutz for not articulating the specific question of whether outdated regulations might work a hardship on a property as a matter of law, I would observe that Lutz was the verdict winner before the trial court and therefore bore no burden to raise or preserve this issue before the Commonwealth Court. Thereafter, Lutz appealed on the basis that the Commonwealth Court abused its discretion when it resolved the case in one paragraph, devoid of meaningful analysis, in which it simply stated that it "did not agree" with the trial court. *Kneebone*, 2020 WL 3866643 at *5. Indeed, we may have held that an abuse of discretion occurred if we found that the panel brazenly substituted its judgment for that of the court below. Accordingly, a discussion of the merits of Lutz' application for a variance was never necessary to the resolution of this case up until now, when, for the first time, the Court seems to conclude that, for purposes of analysis, a claim of hardship based upon the undersized nature of a lot is indistinguishable from a claim of hardship based upon the desire to provide family members more space.

or of the MPC,[7] nor does either party request our guidance in navigating this Court's zoning law precedent. Rather, the parties argue only over the application of these commands to the instant dispute. Indeed, both parties agree that the standard of appellate review contemplates an abuse of discretion or an error of law, *compare* Lutz Br. at 3 *with* Kneebone Br. at 7 (both citing *Baker v. Chartiers Twp. Zoning Hearing Bd.*, 677 A.2d 1274 (Pa. Cmwlth. 1996)), and both agree that *Hertzberg* applies. *Compare* Lutz Br. at 12 *with* Kneebone Br. at 7-8 (both citing *Hertzberg*, 721 A.2d at 47). Lutz claims error and asks that we correct it, while Kneebone denies that any error exists. Without any opportunity to "elucidate broad legal principles or otherwise refine or advance Pennsylvania law," we are once again left with a "fact-specific appeal under a highly deferential abuse-of-discretion standard." *See Steltz v. Meyers*, 265 A.3d 335, 353 (Pa. 2021) (Wecht, J., dissenting). Because the only resolution to this matter I foresee would be of import to no one outside the Kneebone and Lutz households, and because neither party's argument indicates any opportunity to expand upon or clarify relevant legal principles, I believe that this case constitutes error review of the type this Court generally does not entertain. *See* Pa.R.A.P. 1114.

For the foregoing reasons, I would dismiss this case as improvidently granted and await a more appropriate vehicle to resolve these important questions.

Justice Dougherty joins this opinion in support of dismissal, except for the improvidently granted disposition.

---

[7]     53 P.S. §§ 10101-11202.