# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jefferson Borough, : 
                         Appellant : 
                                : 
           v. : 
                                  : 
Zoning Hearing Board of :    No. 1697 C.D. 2017
Jefferson Borough :    Submitted: May 4, 2018

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: July 25, 2018

Jefferson Borough (Borough) appeals from the York County Common Pleas Court's (trial court) October 13, 2017 order affirming the Borough's Zoning Hearing Board's (ZHB) decision granting Seth E. Rohrbaugh's (Applicant) dimensional variance application (Application) for a widened-access driveway to his property located at 49 York Street,[1] York County, Pennsylvania (Property). The sole issue before this Court is whether the ZHB erred by concluding that Applicant met the criteria for obtaining a variance. Upon review, we reverse.

Applicant's home was originally constructed with a conforming driveway. In 2012, Applicant applied for a building permit to widen his driveway to 30 feet which was denied. After denying the permit, the Code Enforcement Officer sent Applicant a letter informing him that the Borough's Codification of Zoning

---

[1] The parties refer to Applicant's address as "49 York Road" throughout the hearing. However, the Court references his address as "49 York Street" to correspond to the tax parcel information located in the record. *See* Reproduced Record (R.R.) at 24.

Ordinance (Zoning Ordinance) only allows a 20-foot-wide driveway and detailing his options to comply - widen his driveway beginning at a distance of 10 feet from the street or request a variance from the ZHB. Rather than seeking ZHB approval to widen his driveway or appeal from the denial of the permit, Applicant black-topped his driveway to a width of 38 feet. By July 21, 2016 letter, the Code Enforcement Officer notified Applicant that he was in violation of the Zoning Ordinance for constructing a 38-foot-wide driveway after he was denied a permit to widen it.

On November 1, 2016, Applicant filed the Application. By November 28, 2016 letter, the Borough Planning Commission provided comments on Applicant's request to the ZHB and did not find that the standards for granting a variance were met. The ZHB held a hearing on November 30, 2016. *See* Reproduced Record (R.R.) at 29-65. On December 28, 2016, the ZHB granted the Application, thereby allowing Applicant to keep his 38-foot-wide driveway, subject to certain conditions.[2] The Borough appealed to the trial court. On October 13, 2017, the trial court, without taking evidence, affirmed the ZHB's decision, finding unnecessary hardship consistent with the ZHB's findings. *See* R.R. at 215-221. The Borough appealed to this Court.[3]

---

[2] Because York Street is a state road, Applicant must obtain a Commonwealth of Pennsylvania, Department of Transportation (PennDOT) highway occupancy permit. *See* R.R. at 46. The ZHB stated that Applicant would need to meet the following requirements to maintain his driveway: (1) obtain a PennDOT highway occupancy permit for the new access width, if required; (2) if an occupancy permit is not needed, then obtain approval from the Borough's Engineer; and (3) obtain PennDOT approval for any improvements within its right-of-way. *See* R.R. at 71, 77.

[3] Where "the trial court d[oes] not take any additional evidence, an appellate court is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014). "We may conclude that the zoning board abused its discretion only if its findings are not supported by substantial evidence, which we have defined as 'relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached.'" *Id.* (quoting *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009)).

The Borough argues that the ZHB erred by granting the variance. Specifically, the Borough contends that the ZHB erred by finding Applicant established: (1) an unnecessary hardship unique to the Property; (2) the hardship was not self-created; (3) the variance will not alter the essential character of the neighborhood, impair development or be detrimental to the public welfare; (4) the variance is the minimum necessary to afford relief; and (5) standards for a dimensional variance have been met.

Initially, "[a] property owner seeking a variance must demonstrate both unnecessary hardship if the variance is denied and that the proposed variance is not contrary to the public interest." *Goldstein v. Zoning Hearing Bd. of Twp. of Lower Merion*, 19 A.3d 565, 569 (Pa. Cmwlth. 2011); *see also* Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC).[4] Further, Section 198-41 of the Zoning Ordinance provides:

> Where there is **unnecessary hardship**, the [ZHB] may grant a variance in the application of the provisions of this chapter, provided that the following findings are made where relevant in a given case:
>
> (1) There are **unique physical circumstances** or conditions, including (a) irregularity, narrowness, or shallowness of lot size or shape, or (b) exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or zone in which the property is located.
>
> (2) Because of such physical circumstances or conditions, there is **no possibility that the property can be developed in strict conformity** with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

(3) The unnecessary **hardship has not been created by the appellant**.

(4) The variance, if authorized, **will not alter the essential character of the neighborhood** or zone in which the property is located, nor substantially **or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare**.

(5) The variance, if authorized, will represent **the minimum variance that will afford relief** and will represent the least modification possible of the regulation in issue.

Zoning Ordinance § 198-41(C) (emphasis added); R.R. at 143. "It is the function of the [ZHB] to determine whether the evidence satisfies the criteria for granting a variance." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014); *see also* 53 P.S. § 10910.2. The Pennsylvania Supreme Court declared in *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43 (Pa. 1998):

> When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id.* at 47. This Court explained:

> [I]n *Hertzberg*, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a **dimensional variance**, as opposed to a use variance.
>
> Under *Hertzberg*, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: '*the **economic detriment** to the applicant if the variance was denied*, the **financial hardship** created by any work necessary to bring the building into strict compliance with

4

the zoning requirements and *the **characteristics of the surrounding neighborhood**.*' *Id.* at 50 (emphasis added).

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015) (bold emphasis added).

Despite the relaxed standard, "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011). Moreover, notwithstanding that an application is for a dimensional variance, "[t]he same criteria apply to use and dimensional variances," meaning that "[a]n applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tidd*, 118 A.3d at 8. Finally, Section 198-41 of the Zoning Ordinance requires the ZHB to make findings of fact as to each of the criteria listed therein.

**1. Hardship Caused by Unique Physical Circumstances Peculiar to the Particular Property**

Pursuant to Section 198-41(1) of the Zoning Ordinance, Applicant had to establish and the ZHB had to make a finding that the Property's unique physical circumstances created an unnecessary hardship. Although the quantum of proof necessary to establish unnecessary hardship for a dimensional variance is less than that needed to obtain a use variance, *see Hertzberg*, an applicant is nevertheless required to prove that a property's unique physical characteristics limit its development in accordance with the ordinance. *See Singer*. Moreover, "an applicant must demonstrate something more than a mere desire to develop a property as it wishes or that it will be financially burdened if the variance is not granted." *Singer*, 29 A.3d at 150. In addition, our Supreme Court has ruled that the granting of a variance "cannot be done simply to accommodate the changing needs of a growing

5

family." *Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 672 A.2d 286, 290 (Pa. 1996).

The law is well established that "[t]he hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district." *In re Chestnut Hill Cmty. Ass'n*, 155 A.3d 658, 666 (Pa. Cmwlth. 2017) (quoting *Marshall*, 97 A.3d at 329). This Court has specifically ruled that unique conditions "must relate to the physical conditions of the land itself and not to man-made improvements, such as poured asphalt and concrete . . . ." *In re Appeal of Taubenberger* (Pa. Cmwlth. No. 2692 C.D. 2015, filed December 9, 2016), slip op. at 13.[5]

Based upon the evidence presented, the ZHB made the following undisputed findings:

> 3. The [P]roperty is approximately .67 acres and is a slightly irregular rectangle approximately 120 feet wide (along York Street) and approximately 240 feet long (along Burns Road). The [P]roperty is improved with a single-family home, a pool, and a recently[-]added pole barn.
>
> 4. The home was originally constructed with a conforming driveway which did not exceed 20 feet in width within 10 feet of the [York S]treet right-of-way.
>
> 5. After the [P]roperty was improved with a pole barn, the 'driveway' was widened by use over time to accommodate ingress and egress to the pole barn. The 'driveway', since it was also being used by 4 vehicles owned by Applicant and his family, was widened by the use of the vehicles. As such, the footprint of the 'driveway created by these uses exceeded the original conforming driveway.'
>
> . . . .

---

[5] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Taubenberger* is herein quoted for its persuasive value.

10. [] Applicant testified that the size of the original driveway (prior to the new black top) could not accommodate the four cars/trucks owned by [] Applicant and his family. Because of the space limitation, [Applicant] testified that he could not turn vehicles around in the driveway which required him to 'back out' on to York [Street] which [] Applicant testified as being unsafe.

11. [] Applicant also testified that there were water drainage issues along the York [Street] frontage of his [P]roperty which was exacerbated by [] Applicant's use of the [P]roperty prior to the paving addition. [] Applicant testified that the stormwater flowing along [York Street] entered his [P]roperty and, along with the use of the vehicles over the existing grassy areas, turned [] Applicant's [P]roperty into a 'mud pit'. According to [] Applicant, the new paving has solved the water drainage issue.[6]

ZHB Dec. at 1-2.

Based upon that evidence, the ZHB concluded:

[T]he subject [P]roperty is a slightly irregular rectangular lot, 120 feet by 240 feet - a standard residential lot. **There was no testimony that irregularity, narrowness, or shallowness of the lot, exceptional topographical or physical conditions created any hardship**. Rather, the size of the driveway (or the size of the front yard area to install a larger but conforming driveway) is too small to accommodate [] Applicant's use (*i.e.*, 4 vehicles and ingress/egress to/from the pole barn).

As to alternative driveway sites, since the [P]roperty has two road frontages, [] Applicant testified that there are stormwater facilities along Burns Road which would make the location of an alternate driveway impractical.

As such, **the hardship results from the size of the original driveway and the number of cars that [] Applicant has** which otherwise makes it impossible to

---

[6]Applicant's neighbor Kevin Laughman testified that he faced similar issues of inadequate drainage and backing out onto York Street. *See* R.R. at 35, 53. He further reported that he liked Applicant's improvement, that Applicant had done a nice job with it, and that some of the drainage issues had been resolved by it. *See* R.R. at 35.

maneuver the cars around the driveway and permit the cars to exit the [P]roperty onto York [Street] without backing out. Consequently, the hardship also has a safety component. [] Applicant testified, which testimony was confirmed by Kevin Laughman [(Laughman)] of 45 York Street, . . . that traffic on York [Street] makes backing out of a driveway unsafe. [] Applicant testified, that prior to the installation of the new blacktop, he was essentially using his front yard as a driveway to allow his vehicles to maneuver. This caused mud, erosion, etc., and further exacerbation of drainage problems along York [Street].

. . . [Considering *Hertzberg*], the [ZHB] notes that [] Applicant had already expanded his 'driveway' by use over time. He did this of his own perceived necessity since he could not maneuver the number of cars in the footprint of the existing driveway in order to permit him not to 'back out' of the driveway. He also created a wider driveway frontage along York [Street]. The only thing that the new paving did was to pave over a foot print of an altered but existing driveway, configuration. As a result, the [ZHB] is being asked to rule on a variance request for a condition which has existed for a number of years. In some respects, the black topping made the existing condition 'better' in terms of drainage and appearance.

ZHB Dec. at 4 (emphasis added).

However, based on the record evidence, most of the parcels along York Street are similarly-sized and all of them have the same driveway width and setback requirements as Applicant. None of the neighboring properties have sufficient room for the owners to turn their vehicles in their dimensionally-compliant driveways. Further, the lots along York Street face the same drainage issues. The only features distinguishing the Property are Applicant's four vehicles and pole barn, which Applicant added. Under the circumstances, the Property's purported hardship "'aris[es] from the impact of the [Z]oning [Ordinance] on the entire [Borough],'" and is not "unique to the [P]roperty."[7] *Chestnut Hill*, 155 A.3d at 666 (quoting *Marshall*,

_____

[7] Even under the relaxed *Hertzberg* standard for a dimensional variance, Applicant failed to provide evidence of the neighborhood's characteristics, and a recognized economic and/or financial

8

97 A.3d at 329).  Thus, Applicant did not establish, nor did the ZHB find that the Property's unique physical circumstances created an unnecessary hardship.

### 2. No Possibility of Development in Strict Compliance with the Ordinance due to such Physical Conditions

Section 198-41(2) of the Zoning Ordinance required Applicant to establish and the ZHB to make a finding that the Property's unique physical circumstances made it impossible to develop it in strict conformity with the Zoning Ordinance.  The ZHB declared, based upon the evidence before it, that "the [P]roperty has been used for a residence with a twenty-foot driveway for many years and there is no reason that it cannot continue with a twenty-foot driveway."  ZHB Dec. at 5.  Although the ZHB recognized that the Property's use "has intensified over the years (*e.g.*, the addition of a permitted pole barn) such that the conforming driveway no longer met [] Applicant's needs," ZHB Dec. at 5, the ZHB nevertheless concluded that "[s]ince the [P]roperty was developed in conformity with the . . . Zoning Ordinance and used as such for many years, [] Applicant has not demonstrated that there is no possibility that the [P]roperty cannot be developed in conformity with the [Zoning] Ordinance." ZHB Dec. at 4.  Therefore, Applicant did not prove, nor did the ZHB find that the Property's unique physical circumstances made it impossible to develop it in strict conformity with the Zoning Ordinance.

---

detriment.  At the very least, after Applicant's building permit was denied, he was aware that the Zoning Ordinance prohibited his driveway expansion.  Notwithstanding, Applicant not only widened his driveway, but nearly doubled the size the Zoning Ordinance allowed.  He sought a variance only **after** the project was completed.  Therefore, any financial or economic detriment Applicant may suffer from having to remove the expanded blacktop is not the type this Court recognizes as an unnecessary hardship entitling him to a variance. *See Goldstein*.

**3. Unnecessary Hardship is not Self-Created**

In accordance with Section 198-41(3) of the Zoning Ordinance, Applicant was required to establish and the ZHB had to make a finding that the unnecessary hardship was not self-created. Here, the ZHB did not consider whether the hardship was self-created. Our Supreme Court has declared that "[t]he **failure of a zoning board to consider each requirement of a zoning ordinance prior to granting a variance is an error of law**." *Larsen*, 672 A.2d at 289-90 (emphasis added). Applicant failed to establish that the hardship was not self-created and the ZHB failed to make a finding or consider whether Applicant's hardship was self-created.

**4. A Variance will not Alter the Essential Character of the Neighborhood, nor Substantially Impair Adjacent Property Development, nor Harm the Public Welfare**

Section 198-41(4) of the Zoning Ordinance required Applicant to establish and the ZHB to make a finding that granting the variance will not alter the neighborhood's essential character, substantially impair adjacent development or harm the public welfare. On this criterion, the ZHB stated:

> [] Laughman who is a neighbor of [] Applicant, stated that 'he has no problem with the proposal', that [] Applicant's paving of the driveway has solved a water drainage problem along York [Street], and that [] Applicant did a 'nice job' on the driveway.
>
> Of particular concern . . . is what appears to be a common belief that backing out onto York [Street] is dangerous because of the speed limit . . . and the frequent violations of the posted speed limit. While the [ZHB] is concerned about the safety issue, it is also mindful that the width of driveways is regulated in part to prevent multiple ingress/egress points in and out of properties creating other safety issues. There was no evidence offered at the hearing, however, that the grant of the [v]ariance would adversely affect safety. And, we note that Section 198-29 [of the

10

Zoning Ordinance] permits the width of an access drive to be established by the Borough Engineer and the number of driveways/access drives to be increased under exceptional circumstances by [s]pecial [e]xception.  Further, we note that Section 198-29 [of the Zoning Ordinance] contains standards for location, angle, sight distances and slope.

Unfortunately, no engineering or other expert testimony was produced at the hearing regarding the safety issues implicated by backing out of driveways, multiple ingress/egress points, speed limits, etc.

ZHB Dec. at 5.  The record evidence supports the conclusion that granting the variance will alter the neighborhood's essential character, substantially impair adjacent development or harm the public welfare.  Thus, Applicant failed to establish, and the ZHB failed to find, that granting the variance will not alter the neighborhood's essential character, substantially impair adjacent development or harm the public welfare.

### 5.  Variance is the Minimum Departure Necessary for Relief

Pursuant to Section 198-41(5) of the Zoning Ordinance, Applicant was required to establish and the ZHB had to make a finding that the requested variance is the minimum necessary to afford Applicant relief.

The Planning Commission's report suggested two alternatives to afford Applicant relief without a variance: (1) a second access drive from Burns Road to the rear of the Property, or (2) permeable pavers placed adjacent to the driveway (*i.e.*, "honeycomb-shaped plastic paving grids [that] allow for grass to grow, while providing for a stable surface to minimize ruts in the area").  Planning Commission Report at 2.

The ZHB declared:

Because the 38[-]foot[-]wide driveway has already been installed, the [ZHB] concludes that the 38 feet represent the minimum variance that [] Applicant requires.  There was no

11

evidence that [] Applicant could accomplish the same result with a narrower driveway, at least within 10 feet of the street right-of-way. However, the [ZHB] notes, at least with respect to area within [10] feet of the road right-of-way, that the front yard area does not need to be paved with blacktop in order to provide the relief that [] Applicant seeks, since [] Applicant simply seeks a wider area in order to turn vehicles around. As set forth in the Planning Commission's letter, the installation of permeable pavers adjacent to the front driveway area and 10 feet off of the road right-of-way might not only offer a minimum variance, but no need for a variance at all. However, given the width of the [Commonwealth of Pennsylvania, Department of Transportation's (PennDOT)] right-of-way (assumed 50 feet) and given that [] Applicant has paved within the PennD[OT] right-of-way, the amount of area for the pavers would be minimal. Moreover, the pavers would serve the same function as the blacktop and could be considered a driveway if it provides access.

ZHB Dec. at 5-6.

While the ZHB acknowledged that the variance did not represent the minimum departure necessary from the Zoning Ordinance, it nevertheless relented in the variance because the driveway was already paved. However, since the record is clear that there were alternate and less violative ways for Applicant to resolve his space issues, there was not substantial evidence to support the ZHB's conclusion.[8] Therefore, Applicant did not establish, nor did the ZHB find that the requested variance is the minimum necessary to afford Applicant relief. Under the circumstances, Applicant's 38-foot-wide driveway was not the minimum variance necessary to afford him relief.

---

[8] Applicant admitted that the Planning Commission recommended alternatives to paving, but he did not investigate them. *See* R.R. at 39. Applicant further stated: "[B]asically what I am asking for [is] to keep my driveway. It's already done. That's it." R.R. at 32. "It's not like a building where it's going to be unsafe. It's not going to hurt anybody." R.R. at 41. "I didn't think it was [] too big of an issue." R.R. at 55.

12

This Court acknowledges that "[a zoning board's] interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). We also recognize that "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land." *Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 941 (Pa. Cmwlth. 2009).

> However, a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. '[Z]oning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.' Thus, the [ZHB] is required to apply the terms of the Zoning Ordinance as written rather than deviating from those terms based on an unexpressed policy.

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation omitted) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995)).

Here, notwithstanding that Applicant's driveway expansion may offer him broader use and enjoyment of his land and that the ZHB found it acceptable, Applicant failed to satisfy his burden of meeting <u>all</u> the criteria necessary to obtain a variance. Moreover, the ZHB failed, as a matter of law, to make the requisite findings as to each requirement. *See* Zoning Ordinance § 198-41.

> Our Supreme Court succinctly explained:

> In the leading case of *Application of Devereux Found*[*ation*]*, Inc.*, . . . 41 A.2d 744, 746[-47 (Pa. 1945)], Justice, now Chief Justice, Stern said, in discussing a variance: 'It was said in *Kerr's Appeal*, . . . 144 A. 81, 84 [(Pa. 1928)]: 'The **difficulties and hardships, which move the board of adjustment to depart from the strict letter of the ordinance,**

13

**should be substantial and of compelling force**.'
And in *Valicenti's Appeal*, . . . 148 A. 308, 310[-]11 [(Pa. 1929)], it was said: 'It is true that variations may be permitted, but only in cases of practical necessity, and for reasons that are 'substantial, serious and compelling.''. . . '**The strict letter of the ordinance may be departed from only where there are practical difficulties or unnecessary hardships in the way of carrying it out**; and in such manner that the spirit of the ordinance may be observed, the public health, safety and general welfare secured and substantial justice done. No other considerations should enter into the decision.' . . . **Mere hardship is not sufficient; there must be *unnecessary* hardship** . . . .

'We do not believe that it was the intention of the legislature, nor of the township supervisors, to empower a board of adjustment to set at naught the zoning statute and ordinance under the guise of a variance. **The power to authorize such a variance is to be sparingly exercised and only under peculiar and exceptional circumstances, for otherwise there would be little left of the zoning law to protect public rights; prospective purchasers of property would hesitate if confronted by a tribunal which could arbitrarily set aside the zoning provisions designed to establish standards of occupancy in the neighborhood**. Indeed, if such power were to be interpreted as a grant to the [ZHB] of the right to amend or depart from the terms of the ordinance at its uncontrolled will and pleasure, it might well be challenged as being an unconstitutional delegation of legislative authority to a purely administrative tribunal.'

*Pincus v. Power*, . . . 101 A.2d 914, 916 ([Pa.] 1954) (emphasis added) (quoting *Devereux Found.*, 41 A.2d at 747). Here, the [ZHB] failed to adhere to the Zoning [Ordinance's] mandates.

Moreover, '[w]here substantial evidence does not support the [ZHB's] findings, the [ZHB] abused its discretion and reversal is warranted.' *Hafner*, 974 A.2d at 1209 n.1. Even

14

> reviewing the evidence in [] Applicant's favor, as we must, we hold that there was not substantial evidence to support the [ZHB's] findings and conclusions that denial of the requested variance would result in unnecessary hardship. In the absence of such findings, the [ZHB's] decision must be reversed.

*Chestnut Hill*, 155 A.3d at 668.

Because Applicant did not "present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship[,]" *Tidd*, 118 A.3d at 8, and the ZHB did not make findings of fact as to each of the criteria listed in Section 198-41 of the Zoning Ordinance, the ZHB erred as a matter of law by granting the Application.

For the foregoing reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jefferson Borough,                          :
                    Appellant               :
                                            :
          v.                                :
                                            :
Zoning Hearing Board of                     :   No. 1697 C.D. 2017
Jefferson Borough                           :

# O R D E R

AND NOW, this 25th day of July, 2018, the York County Common Pleas Court's October 13, 2017 order is reversed.

_____
ANNE E. COVEY, Judge